**MILLENNIUM LABORATORIES, INC., Plaintiff,**

v.

**ALLIED WORLD ASSURANCE COMPANY (U.S.), INC., Defendant.**

**Case No. 12-cv-2280-BAS(KSC)**

United States District Court, S.D. California.

Signed 02/25/2016

Marc D. Halpern, Abelson Herron Halpern. LLP, San Diego, CA, Vincent H. Herron, Lisa Von Eschen, Nadia A. Sarkis, Abelson Herron Halpern LLP, Los Angeles, CA, for Plaintiff.

Frank Gooch, III, Gilchrist and Rutter, Jane Elizabeth Lippman, Yen N. Hope, Gilchrist and Rutter Professional Corporation, Santa Monica, CA, Thomas H. Prouty, Troutman Sanders LLP, Irvine, CA, Phillip E. Wilson, Jr., Ronald P. Schiller, Robert A. Wiygul, Hangley Aronchick Segal Pudlin and Schiller, Philadelphia, PA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION

### [ECF No. 219]

Hon. Cynthia Bashant, United States District Judge

Based on purportedly newly available evidence regarding allegations investigated by the U.S. Department of Justice, Defendant Allied World Assurance Company (U.S.), Inc. ("Allied World") now moves for reconsideration of the Court's September 30, 2015 Summary Judgment Order. Plaintiff Millennium Laboratories, Inc. ("Millennium") opposes.

The Court heard argument from the parties on February 17, 2016. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Allied World's motion for reconsideration.

## I. INTRODUCTION

Back in 2012, when Millennium bought the insurance Policy at issue in this case,[1]

---

1. The Forcefield Healthcare Organizations Directors and Officers Liability Policy No. 0307–1511 issued by Allied World to Millennium for the policy period of December 1, 2011 to December 1, 2012 ("Policy").

it was facing problems. Several competitors had filed private lawsuits and several whistle-blowers had filed *qui tam* actions against Millennium. These lawsuits alleged that Millennium engaged in unlawful business practices, that it encouraged health care providers to submit false and/or fraudulent claims to health insurers and that it provided unlawful kickbacks to those health care providers.

Millennium understandably wanted insurance that would pay for any such lawsuits filed in the future. Allied World, the insurance company that provided coverage in 2012, wanted to make sure it was not covering the proverbial burning building. The result was the Policy, negotiated by top-notch lawyers, all trying to make sure their respective clients were protected. Millennium wanted protection from future lawsuits. Allied World wanted to exclude actions that had culminated in lawsuits already filed.

Along came the U.S. Department of Justice ("DOJ"), eager to jump on the illegal-activities allegations made in past lawsuits and interested in ferretting out any illegal activities—past and present—by Millennium. The DOJ issued broad subpoenas, asking for a wide range of documents and listing a wide range of potential offenses. Millennium turned to Allied World and asked for coverage in responding to these requests.

On September 30, 2015, this Court issued an Order Granting Millennium's and Denying Allied World's Motions for Summary Judgment. (ECF No. 217.) At that point in time, since the DOJ investigation was shrouded in Grand Jury investigation secrecy, it was impossible to determine whether the investigation or allegations being investigated arose out of, were based upon, or were attributable to prior actions or to wholly new conduct.

■ On October 28, 2015, Allied World filed a Motion for Reconsideration based on ·newly discovered evidence. (ECF No. 219.) Allied World bases the motion on the Complaint filed by the DOJ against Millennium, which has now been unsealed, and the Settlement Agreement reached between Millennium and the DOJ, which was made public in mid-October 2015.[2]

## II. THE SETTLEMENT AGREEMENT [3]

The DOJ reached a settlement with Millennium and various Relators, including Robert Cunningham ("Settlement Agreement"). (Def.'s RJN Ex. 2, ECF No. 219-4.) Among other actions, the Settlement Agreement settled the *qui tam* action of *United States ex rel. Cunningham v. Millennium*, No. 09–12209 (D.Mass. Dec. 29, 2009). (*Id.*)

In the Recitals of the Settlement Agreement, "[t]he United States contends that it has certain civil claims against Millennium arising from the submission of claims to the Federal Health Care Programs from January 1, 2008 through May 20, 2015 for . . .(1) excessive and unnecessary UDT [Urine Drug Testing] ordered by physicians without an individualized assessment of patient need . . . [and] (2) UDT referred by physicians who received free point-of-

2.  Allied World requests that this Court take judicial notice ("RJN") of a wide variety of materials associated with this Settlement Agreement, including the unsealed Complaints, Settlement Agreements, and press releases issued by the Department of Justice. (ECF Nos. 219-3, 219-4.) Millennium does not oppose this request. The Court will take judi-

cial notice of the Settlement Agreements and the unsealed Complaints. Fed. R. Evid. 201.

3.  This Court adopts and incorporates by reference the "Background" detailed in its September 30, 2015 Summary Judgment Order (ECF No. 217) and only outlines here the information newly revealed in mid-October 2015.

care drug testing supplies [illegal kick-backs]." (Def.'s RJN Ex. 2, ECF No. 219-4.)

## III. LEGAL STANDARD

■ Rule 59(e) of the Federal Rules of Civil Procedure permits a district court to reconsider and amend a previous judgment based on newly discovered evidence. *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir.2003). To justify an amendment because of newly discovered evidence, Allied World must show: (1) the evidence was discovered after the court's judgment was issued: (2) that even with due diligence the evidence could not have been discovered earlier; and (3) "that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different." *Id.*

■ Reconsideration is an "extraordinary remedy to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000) (internal quotation marks omitted). It should not be used as an opportunity to raise arguments that should have been raised earlier. *Id.*

## IV. DISCUSSION

### A. Allied World Has Proven the Specific Claims Exclusion Applies.

Allied World has clearly established that the unsealed Settlement Agreement and Complaint were not discovered until mid-October, after the Court issued its Order at the end of September. It has further shown that, despite its attempts to learn of the contents of the Settlement Agreement earlier, it was unsuccessful. Thus, the only issue is whether, had the Court known of this information, the outcome would have been different. Because the evidence is

newly discovered, the Court will consider the Motions for Summary Judgment *de novo* and will not require Allied World to show "clear error" in the Court's original order. *See McDowell v. Calderon*, 197 F.3d 1253, 1254–55 (9th Cir.1999).

The "Specific Claims Exclusion" in the Policy provides that "[n]o coverage will be available for Loss from any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or *in any way involving*" the Ameritox Action, the Aegis Action, and the Robert Cunningham Action. (Wiygul Decl. Ex. 17, Endorsement 7, ECF No. 161-2 (emphasis added).)

■ A quick review of the three Actions listed in the Specific Claims Exclusion and a comparison of the Settlement Agreement makes it clear that this exclusion applies. *Ameritox v. Millennium*, No. 11–775 (M.D.Fla. Apr. 18, 2011) and *Ameritox v. Millennium*, No. 11–866 (S.D.Cla. Apr. 22, 2011) (collectively, "Ameritox Action") were lawsuits filed by a Millennium competitor alleging that "Millennium formed a business plan to increase its market share...through an improper and illegal scheme" including illegal kick-backs and encouraging false billings to Medicare.[4] (Def.'s MSJ RJN Ex. 5 ¶¶ 10-11, ECF No. 161-3; Def.'s MSJ RJN Ex. 11, ECF No. 161-4.) These are exactly the same allegations listed in the Complaint filed by the DOJ against Millennium and Settlement Agreement entered into between the parties.

*Aegis Sciences Corp. v. Millennium*, No. 11–294 (M.D.Tenn. Mar. 29. 2011) ("Aegis Action") was an "action for injunctive relief, disgorgement of ill-gotten gains and damages caused by Millennium's numerous ongoing and constantly evolving schemes

4. References to Allied World's request for judicial notice related to its summary-judgment motion will be abbreviated as "MSJ RJN" for the purposes of this order.

to defraud the federal and state health care programs...and private payors and insurers. Millennium's panoply of schemes include illegal kickbacks, fee sharing arrangements and fraudulent, unnecessary and duplicative testing and billing practices." (Def.'s MSJ RJN Ex. 7, Introduction, ECF No. 161-4.) Again, these allegations are the same allegations referenced in the Settlement Agreement.

However, most telling is *United States ex rel. Cunningham v. Millennium*, No. 09–12209 (D.Mass. Dec. 29, 2009) ("Cunningham Action"), in which Robert Cunningham alleged Millennium violated the Federal False Claims Act, 31 U.S.C. § 3729(a), by using a model that "encourage[d] physicians to submit false claims to government and private health insurance programs." (Wiygul Decl. Ex. 2 ¶ 16, ECF No. 161-2.) This is most telling because, now that the Settlement Agreement has been unsealed, it is clear that the Department of Justice investigation and ensuing subpoenas, involved, at least in some way, the Robert Cunningham Action because it culminated in settlement of that Action.

Had the Court known of the Settlement Agreement at the time it issued its Order regarding Summary Judgment Motions, its Order would have been different. At the time the Order was issued, Allied World had failed to prove that the Department of Justice investigation "in any way involved" any of the actions listed in the specific claims exclusion. They have now done so.

**B. No DOJ Allegations Fall Outside the Specific Claims Exclusion.**

Millennium argues that, while the "Specific Claims Exclusion" might apply to some aspects of the Department of Justice investigation, in fact the investigation and the subpoenas were investigating far broader activities. Thus, argues Millennium, if the Court finds the "Specific Claims Exclusion" applies to some of the docu-

mentary evidence requested by the Department of Justice, it does not apply to all.

In support of this argument, Millennium points to examples of DOJ allegations it claims fall outside of the "Specific Claims Exclusion" including allegations that: (1) some Millennium employees had created fake custom profiles; (2) Millennium had a requirement that physicians order a minimum number of drug tests with each order; (3) Millennium had engaged in witness intimidation and destruction of evidence; and (4) Millennium made false representations to doctors about the efficacy of some of the testing and that they would be sued in legal actions because they didn't do enough testing. However, a closer look at all of these examples shows how each is still involved, at least in some way, with the three specified excluded actions.

For example, in the DOJ Complaint, under the heading "Millennium Caused Physicians to Order UDT That Was Not Reasonable and Necessary in Violation of Medicare Requirements," the DOJ alleges that Millennium had a plan to direct physicians to establish protocols that required dozens of drug tests, regardless of each patients' individualized need or condition. (Def.'s RJN Ex. 1 ¶ 88, ECF No. 219-3.) Millennium accomplished this plan in a variety of ways—by having the doctors fill out standing order forms that required a minimum number of drug tests or creating fake custom profiles for these doctors (*id.* Ex. 2 ¶¶ 89-99); by telling the doctors they would be subject to regulatory action if they did not order more tests (*id.* Ex. 1 ¶ 118); and by making false representations to the doctors about "false negative" rates (*id.* Ex. 1 ¶¶ 120-21). Although Millennium's counsel attempts to couch this as separate wrongs being investigated by the DOJ, in fact, this is exactly the same conduct that is alleged in the Ameritox Action

("Millennium formed a business plan to increase its market share...through an improper and illegal scheme" including false billings to Medicare); the Aegis Action (Millennium's "ongoing and constantly evolving schemes" to defraud federal health care programs by "unnecessary and duplicative testing and billing practices"); and the Cunningham Action (Millennium violated the Federal False Claims act by encouraging doctors to submit false claims).

Even the witness-intimidation allegations, which involved a Power Point presentation given by the Millennium CEO showing Millennium's competitors, including Ameritox and Aegis, in body bags (Def.'s RJN Ex. 1 ¶ 181), were also allegations made in the Ameritox Action.[5] Finally, the allegations that Millennium destroyed evidence had to do with emails Millennium instructed its sales representatives to delete, again showing that it put pressure on sales representatives to obtain and submit false drug testing.

All of the DOJ allegations in the Complaint and the Settlement Agreement, including those that Millennium's counsel argues are completely unrelated, are based upon, arising out of, directly or indirectly resulting from, in consequence of or are in some way involving the Ameritox, the Aegis, or the Cunningham Actions. Therefore, the Specific Claims Exclusion applies.

### C. The Duty To Advance Costs Argument Has Already Been Resolved.

■ Finally, relying on *Scottsdale Insurance Co. v. MV Transportation*, 36 Cal.4th 643, 31 Cal.Rptr.3d 147, 115 P.3d 460 (2005), Millennium argues that, even if Allied World can prove today that the Specific Claims Exclusion applies, because Allied World did not have the facts to support this exclusion until the DOJ Complaint and Settlement Agreement became public, any defense costs from 2011-2015 should have been advanced by Allied World.

In *Scottsdale*, the court drew a distinction between a case where there is a duty to defend because there is a potential for coverage with a case where there is not even the potential for coverage. In a case where there is a duty to defend because there is a potential for coverage, that duty is extinguished once it is shown that no claim can in fact be covered. However, at that point, the duty to pay is extinguished prospectively and not retroactively. *Id.* at 655, 31 Cal.Rptr.3d 147, 115 P.3d 460. In other words, an insurance company may not recoup costs advanced under a duty to defend before it becomes clear that the duty no longer exists. On the other hand, where there is not even the potential for coverage because the claims do "not even possibly embrace any triggering harm of the specified sort with the policy period caused by an included occurrence," then the insurance company does not have a duty to defend, and any costs advanced may be recouped. *Id.*

There is one large problem with the parallels Millennium draws with *Scottsdale*. In this case, United States District Judge Marilyn L. Huff clearly found that the "potential for coverage" does not apply and that Millennium must show that the DOJ investigation is actually covered by the Policy. (ECF No. 73.) Thus, Judge Huff concluded, Allied World had no duty to defend, just the duty to reimburse Millennium for defense costs incurred that Millennium demonstrates are actually covered by the Policy.

Since Millennium has failed to show that any defense costs are actually covered by the Policy, and the "potential for coverage"

---

**5.** In the Ameritox Action, Ameritox added claims based on this Power Point presentation and the depiction of Ameritox in body bags to its consolidated third amended complaint.

standard is inapplicable, *Scottsdale* is similarly inapplicable.

## V. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Allied World's motion for reconsideration. (ECF No. 219.) Consequently, the Court **GRANTS** Allied World's Motion for Summary Judgment (ECF No. 161), **DENIES** Millennium's Motion for Summary Judgment (ECF No. 156), and **ORDERS** the Clerk of the Court to enter judgment in favor of Defendant Allied World and against Plaintiff Millennium. The Court also **DENIES AS MOOT** the parties' Joint *Ex Parte* Application to Reset Pretrial and Trial Dates. (ECF No. 218.)

**IT IS SO ORDERED.**